**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Joseph W. HENRY, Defendant–Appellant.**

No. 92–3272.

United States Court of Appeals, Seventh Circuit.

Argued June 9, 1993.

Decided Sept. 3, 1993.

Francis D. Schmitz, Asst. U.S. Atty. (argued), Office of U.S. Atty., Milwaukee, WI, for plaintiff-appellee U.S.

Martin D. Stein (argued), Fields & Associates, Brookfield, WI, for defendant-appellant Joseph W. Henry.

Before CUMMINGS, FLAUM and KANNE, Circuit Judges.

KANNE, Circuit Judge.

This appeal raises a single issue for our review: whether the prosecutor's statements during closing argument deprived the defendant of a fair trial. After reviewing the record and the applicable law, we conclude that the defendant received a fair trial and affirm his conviction.

## I. Background

At approximately 6:30 a.m. on a March morning, someone placed a "911" emergency call to the Milwaukee police. The caller indicated that there were four or five men with guns in apartment three or four at 3111 N. 16th Street, and that two women, one of whom was named Aurela, were in danger. Based on the information received, police officers forcibly entered apartment four at the address given. Once inside the apartment, officers discovered the defendant, Joseph Henry, and two women, Aurela Williams and Brenda Pettway—who were not in danger, just "wiped out" from smoking crack cocaine all night.

During the subsequent search of the apartment (which belonged to Ms. Williams), police found a triple beam balance scale in the bedroom, and a mirror, a straw and white powder on top of a bookcase. A duffle bag, later identified as the defendant's, contained plastic bags typically used for drug distribution, money order receipts for approximately $2400 and a paycheck stub for Henry showing net earnings of $220.69 for forty hours of work. Police also discovered a laundry chute in the kitchen closet which led to the basement of the building. The officers went to the basement and found in the laundry chute connected to apartment four the following: several bags of cocaine (116.7 grams of unadulterated cocaine, as it turns out, some of which was packaged in "dime" and "quarter" sized packages), a bundle of currency amounting to $2,025, most of which was in $10 and $20 bills, and a loaded black .32 caliber semi-automatic pistol.

A federal grand jury returned a two count indictment against Henry. Count one charged him with possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Count two charged Henry with unlawfully possessing a weapon as a convicted felon in violation of 18 U.S.C. § 922(g).

At trial, the government presented evidence that supports the following summary. Eight days prior to his arrest, Henry met Ms. Williams and began supplying her with cocaine. Ms. Williams quickly asked her live-in boyfriend of a year and a half, Roger Hogans, to leave, and Henry moved in. Because she could not afford to pay Henry for the drugs she was consuming, Ms. Williams allowed him to sell drugs from her apartment. The triple beam scale belonged to Henry; he and Ms. Williams used it to break down large amounts of cocaine into resalable quantities. During his stay with Ms. Williams, Henry carried a small black automatic handgun. The night the police arrived, Henry threw cocaine, money and his gun down the laundry chute to prevent the police from finding the items.

In his defense, Henry, through his attorney, claimed he had been set up—pointing to the fact that someone had made the phony 911 call to the police, and that the cocaine, money and gun were not found in the apartment, but in the building's basement. Specifically, Henry suggested that Hogans, Ms. Williams' old boyfriend, was a drug dealer who had framed Henry in revenge for stealing his girlfriend. Apparently the jury was not convinced by Henry's theory; it returned a guilty verdict on both counts.

As mentioned, Henry argues that the verdict against him is tainted because of improper remarks made by the prosecutor during his closing argument. The following excerpts of closing arguments by both the Assistant U.S. Attorney and defense counsel are necessary to place in context the issue before us. Defense counsel began his closing argument:

> Members of the jury, Mr. Schmitz, this whole case began with a lie. That's something I want you to remember when you deliberate on this case and think about the evidence. The whole case began with a lie and that lie was that 911 phone call that directed the police to 3111 North 16th Street. Ask yourselves why did someone make that 911 phone call which Officer July told you on the stand was a false call? It was obviously a false report. Why did someone do that?
>
> I submit to you that the evidence shows is that's because Mr.—I believe Mr. Hogans was trying to set up a rival for the attentions of Ms. Williams. The government may try to say that it was because someone wanted to try to get rid of a drug dealer in the neighborhood. Maybe they thought if they did this call, someone would come, the police would come and things would be taken care of. And I want to speak about that right now.

During the government's rebuttal argument, the prosecutor made the following remarks:

> The 911 call. The government certainly doesn't advocate people—that being a way to have people—police get into a house to arrest drug dealers. Nobody knows what happened here. What I do submit is that the accusation by the defense that Mr.

Hogans did it is preposterous. They have the power, like we do, to call evidence. They could have played the tape, it exists, but they didn't.

At this point, defense counsel objected that the government was arguing facts not in evidence. The government responded that it was addressing an invited response, and continued its closing without comment by the district judge.

When the government concluded, defense counsel moved for a mistrial based on the prosecutor's remarks about the existence of the 911 tape and the defense's failure to introduce it. The district court denied the motion. The question with which we are presented is whether the prosecutor's reference to the 911 tape recording deprived Henry of a fair trial.

## II. Analysis

The district court's disposition of a mistrial motion is reviewed for abuse of discretion. *United States v. Canino*, 949 F.2d 928, 937 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1940, 118 L.Ed.2d 546 (1992). The district judge is afforded great discretion because that judge is in the best position to determine the seriousness of any incidents occurring during the trial. *Id.*

We recently outlined the appropriate method for analyzing whether a prosecutor's remarks during closing argument require a new trial.

> Initially, we consider whether the prosecutor's comment was improper. If it was, we then evaluate the remark in light of the entire trial and determine whether it deprived the defendant of a fair trial. Five factors influence our evaluation of the impact of a prosecutor's improper comment: (1) the nature and seriousness of the prosecutor's misconduct; (2) whether the prosecutor's statements were invited by impermissible conduct of the defense counsel; (3) whether the trial court instructed the jury to disregard the statements; (4) whether the defense was able to counter the improper arguments through rebuttal; and (5) the weight of the evidence against the defendant.

*United States v. Kelly,* 991 F.2d 1308, 1315 (7th Cir.1993) (citations omitted). *See also United States v. Neely,* 980 F.2d 1074, 1083 (7th Cir.1992).

■ The prosecutor's comment in his rebuttal argument was improper. It is fundamental that counsel cannot rely or comment on facts not in evidence during closing argument. *United States v. Van Whye,* 965 F.2d 528, 533 (7th Cir.1992); *United States v. Stillwell,* 900 F.2d 1104, 1112 (7th Cir.), *cert. denied,* 498 U.S. 838, 111 S.Ct. 111, 112 L.Ed.2d 81 (1990); *United States v. Perez–Leon,* 757 F.2d 866, 875 (7th Cir.), *cert. denied,* 474 U.S. 831, 106 S.Ct. 99, 88 L.Ed.2d 80 (1985). Prior to the prosecutor's statement, the jury was not aware that the 911 call had been tape-recorded. Absent evidence that a tape of the call existed, the prosecutor should not have argued that the defense's case was deficient because it failed to introduce a copy of the tape.

■ Having concluded that the government's remark was improper, we turn our attention to the factors identified in *Kelly.* Only two factors weigh in Henry's favor. First, defense counsel did not have an opportunity to respond to the prosecutor's remarks because he made them in his rebuttal argument. *See Kelly,* 991 F.2d at 1315.

Second, contrary to the government's contention, the prosecutor's remarks were not invited by defense counsel's closing argument. The government misconstrues the "invited response" doctrine. The doctrine indeed permits the government to respond to improper defense tactics; however, it "is not a safety zone within which prosecutors may seek refuge." *United States v. Torres,* 809 F.2d 429, 447 (7th Cir.1987) (Flaum, J., concurring). Defense counsel's closing argument was entirely proper; he merely argued the defendant's theory of the case—Mr. Hogans made the 911 call to get rid of Henry, who had stolen his girlfriend. The government was certainly entitled to argue that Mr. Hogans did not make the call, but it could not argue that the defense should have pre-

sented the tape of the 911 call to prove that Mr. Hogans was the caller. In contrast, the prosecutor's comment would have been invited had defense counsel speculated on why the government had not introduced the tape. *Stillwell,* 900 F.2d at 1114; *Perez–Leon,* 757 F.2d at 875. But that is not this case. Here, the government answered an invitation never made.

The other three *Kelly* factors weigh against Henry. First, the prosecutor's remark, though improper, was not highly inflammatory or prejudicial. *Darden v. Wainwright,* 477 U.S. 168, 180 n. 12, 106 S.Ct. 2464, 2471 n. 12, 91 L.Ed.2d 144 (1986) (prosecutor's comment that he wished he could see the defendant with his face blown off by a shotgun did not require reversal); *see Kelly,* 991 F.2d at 1314 (prosecutor's appeal to the jury's emotions did not require reversal). Second, immediately following the government's rebuttal, the district court properly instructed the jury that counsel's closing arguments were not to be considered evidence.[1]

Finally, and most importantly, the evidence of Henry's guilt was strong. *See Neely,* 980 F.2d at 1087 (the most important factor is the strength of the evidence against the defendant). " '[S]trong evidence of guilt eliminates any lingering doubt that the prosecutor's remark unfairly prejudiced the jury's deliberation.' " *Van Whye,* 965 F.2d at 533 (quoting *United States v. Pirovolos,* 844 F.2d 415, 427 (7th Cir.), *cert. denied,* 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988)). Here there is substantial evidence of Henry's guilt.

In addition to the evidence against Henry catalogued above, the government produced other damning testimony. According to the arresting officer, immediately following his arrest, Henry told him, "the only thing that's going to get me in trouble is the gun." He further stated that he could not hire an attorney because the police took all his money. Ms. Williams' sister testified that she had received cocaine from Henry and believed that he sold cocaine from her sister's apartment. Ms. Pettway testified that Hen-

---

1. Specifically, the jury was told the following: First, arguments and statements by the lawyers for the parties are not evidence.... What the attorneys say in their closing arguments is intended to help you interpret the evidence.

   You should consider the closing arguments carefully; however, if the facts as you remember them differ from the way the lawyers have characterized them, it is your memory that controls.

ry was introduced to her as Ms. Williams' new boyfriend. She also stated that three or four people came to Ms. Williams' apartment door the night she was there, and that Henry was in the kitchen area shortly before the police entered the apartment. Finally, Henry's cellmate in the Racine County Jail testified that Henry told him he sold drugs from Ms. Williams' apartment, carried a gun for protection and tried to avoid detection by tossing incriminating evidence down the apartment's laundry chute.

We are satisfied that the jury convicted Henry on the basis of the information properly admitted in evidence, not because of the prosecutor's improper remark concerning the existence of the 911 tape. Any potential prejudice was adequately cured by the district court's instructions to the jury, which the jury is presumed to follow. *Van Whye,* 965 F.2d at 533. The district court did not abuse its discretion by refusing to grant a mistrial.

### III.

There was no reversible error below; Joseph Henry's conviction is AFFIRMED.