97 F.3d 1455
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Vincent D. WHITAKER, Defendant-Appellant.
 No. 95-3829.
 United States Court of Appeals, Seventh Circuit.
 Submitted Sept. 10, 1996.
Decided Sept. 11, 1996.
 
 Before BAUER, EASTERBROOK and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 After a jury trial, Vincent Whitaker was convicted of one count of mailing threatening communications, in violation of 18 U.S.C. § 876, and one count of threatening the President of the United States, in violation of 18 U.S.C. § 871. He was sentenced to a total of 63 months imprisonment on the two counts. Whitaker appealed. On appeal, Whitaker's counsel has requested leave to withdraw and has filed an Anders brief stating her belief that any appeal would be frivolous. Anders v. California, 386 U.S. 738 (1967). Pursuant to Circuit Rule 51(a), Whitaker was notified of his counsel's actions and given an opportunity to respond, and he has done so. Upon independent review of the record, we find no nonfrivolous issues for appeal, and therefore we grant counsel's motion and dismiss the appeal.
 
 FACTS
 
 2
 While incarcerated at the Dane County Jail in February 1995, Whitaker wrote and mailed letters to Elizabeth Karlin and Dennis Christenson, two Wisconsin doctors active in the field of reproductive medicine, including legal abortions. The letters, which were mailed from the Dane County Jail, were signed "Vincent D. Whitaker" and "Vince Whitaker." In them the writer threatened to blow Dr. Karlin's head off and kill her family, and kill Dr. Christenson and his family. Whitaker also wrote and mailed a letter to President Clinton at the White House, threatening to kill him when Whitaker got out of jail. The letters to Christenson and Clinton said "I'm not joking."
 
 
 3
 Dr. Karlin's receptionist called the Madison Police, who collected the letters. The Secret Service picked up the Clinton letter from the White House. Whitaker was charged in a two-count indictment, and at trial on September 11, 1995, experts identified Whitaker's handwriting and his fingerprints on the letters. Whitaker testified in his own behalf and admitted writing and mailing the letters, but said that he was merely angry at his incarcerated status, that he was not angry at the recipients of the letters, and that he would never have acted upon the statements expressed in the letters. He characterized them as an "exaggeration," but agreed that somebody who received the letters would think that he intended to harm them.
 
 
 4
 During closing argument, the government stated "I want you to ask yourselves, ladies and gentlement of the jury, would you take a letter that is delivered to you in the mail that contains a threat to kill you--." The defense objected; the court sustained the objection and, believing that the comment had not prejudiced the defense, refused to grant a mistrial. The defense, to avoid highlighting the episode, chose not to request a curative instruction.
 
 
 5
 The jury was instructed that for it to convict on Count 1 it had to find that "the defendant knowingly deposited or caused to be deposited in the mail for delivery by the Postal Service a communication containing a true threat," and that "the nature of the threat was to cause bodily injury to Elizabeth Karlin or Dr. Dennis Christensen." To convict on Count 2, it had to find that the defendant "caused a letter to be mailed that contained a threat to take the life of the President of the United States," that "the words contained in the letter constituted a true threat as defined in these instructions," and that "the defendant acted knowingly and willfully." A "true threat" was defined as "a statement which under the circumstances and in context would cause a reasonable person to foresee that the statement would be interpreted by those to whom the statement was directed as a serious expression of an intention to inflict bodily harm upon or take the life of Elizabeth Karlin or Dr. Dennis Christensen for Count 1 or the President of the United States for Count 2."
 
 
 6
 The jury deliberated from 4:45 p.m. until 8:37 p.m. on September 11, then reconvened at 9:00 a.m. September 12. It reached a verdict of guilty on both counts at 9:20 a.m. After the verdict was rendered, defense counsel discovered that a prejudicial article regarding the defendant had appeared in The Wisconsin State Journal the morning of September 12. Before sentencing on November 21, the court polled the jury to determine whether the article had influenced the verdict. Each juror stated that he or she had not read the article in question.
 
 
 7
 Whitaker was sentenced to consecutive terms of imprisonment, 60 months for Count 1 and 3 months for Count 2, to run consecutively to a state term of imprisonment imposed previously. He was also sentenced to three years of supervised release.
 
 ARGUMENT
 
 8
 Under Anders, this court "must satisfy itself that the attorney has provided the client with a diligent and thorough search of the record for any arguable claim that might support the client's appeal," and "conclude whether counsel correctly concluded that the appeal is frivolous." United States v. Williams, 894 F.2d 215, 217 (7th Cir.1990) (quoting McCoy v. Court of Appeals of Wisconsin, Dist. 1, 486 U.S. 429, 442 (1988)). Only if the court decides that the case is frivolous may it grant counsel's motion to withdraw and dismiss the appeal. Anders, 386 U.S. at 744. Whitaker and his counsel have raised several issues.
 
 
 9
 One of the issues raised both by counsel and by Whitaker is Whitaker's mental competency. Due process requires that a defendant be competent to stand trial. United States v. Collins, 949 F.2d 921, 924 (7th Cir.1991). "[I]n order to justify a retrospective competency hearing, the appellant 'must present facts "sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to [his] mental competence." ' " United States v. Teague, 956 F.2d 1427, 1431-32 (7th Cir.1992) (citations omitted).
 
 
 10
 Whitaker states that he feels both counsel and the court overlooked his mental history, but counsel, who represented Whitaker on unrelated state charges during the period in question, asserts that Whitaker was found competent after psychiatric evaluation for those state proceedings. In November 1994, three months before the letters were written, Dr. E. Rick Beebe met with Whitaker and reviewed police reports and Whitaker's mental health records before concluding that Whitaker was competent. In April 1995, three months after the letters, Dr. Joy Ann Kenworthy submitted a report for the purposes of sentencing in that state case. According to counsel, Dr. Kenworthy's diagnosis was quite similar to Dr. Beebe's report, and did not indicate to counsel that Whitaker's mental competency had changed since Dr. Beebe's report. Further, the record in this case does not reveal any reason to doubt Whitaker's competency. See Teague, 956 F.2d at 1432.
 
 
 11
 Counsel correctly asserts that two potential Fourth Amendment issues are frivolous. First, any challenge to the seizure and introduction of evidence collected from his cell would be contrary to the Supreme Court's holding that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson v. Palmer, 468 U.S. 517, 526 (1984). Second, Whitaker may not challenge the taking of a handwriting sample, as "handwriting exemplars taken alone are outside the scope of the Fourth Amendment's protection because a person has no reasonable expectation of privacy regarding his handwriting." United States v. Rogers, 475 F.2d 821, 825 (7th Cir.1973) (citing United States v. Mara, 410 U.S. 19 (1973)).
 
 
 12
 Another issue raised both by counsel and by Whitaker concerns the prosecutor's appeal to the jury during closing argument. In evaluating a claim of prosecutorial misconduct, "we consider whether the prosecutor's comment was improper. If it was, we then evaluate the remark in light of the entire trial and determine whether it deprived the defendant of a fair trial." United States v. Kelly, 991 F.2d 1308, 1315 (7th Cir.1993) (citations omitted); United States v. Henry, 2 F.3d 792, 794-95 (7th Cir.1993).
 
 
 13
 There is no doubt that the remark at issue was improper. "A 'Golden Rule' appeal in which the jury is asked to put itself in the plaintiff's position 'is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.' " United States v. Teslim, 869 F.2d 316, 328 (7th Cir.1989) (citations omitted). The Supreme Court has stated, however, that "[i]nappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." United States v. Young, 470 U.S. 1, 111-12 (1985). We do not believe that this remark deprived Whitaker of a fair trial. Defense counsel's immediate objection interrupted the inappropriate comment; the objection was sustained and the prosecutor changed her argument. Further, the defense chose not to request a curative instruction. Most importantly, the evidence in this case (even disregarding Whitaker's admissions, which themselves provided sufficient evidence for conviction) was overwhelming. See Teslim, 869 F.2d at 328.
 
 
 14
 Any argument about the district court's handling of the prejudicial publicity would also be frivolous. This court has directed district courts first to "ascertain if any jurors who had been exposed to such publicity had read or heard the same." United States v. Sanders, 962 F.2d 660, 671 (7th Cir.1992) (quoting United States v. Trapnell, 638 F.2d 1016, 1022 (7th Cir.1980)). "[I]f no juror indicates, upon inquiry made to the jury collectively, that he had read or heard any of the publicity in question, the judge is not required to proceed further." Id. The district judge inquired, and all the jurors responded that they had not read the article in question. There was no need to proceed further.
 
 
 15
 Finally, both counsel and Whitaker raise possible sentencing issues. Whitaker challenges the accuracy of the presentence report, stating that some charges included in his record are inappropriate because he was never convicted of them. He does not specify which charges, but we note that all convictions relevant to the calculation of Whitaker's criminal history category include case numbers and dispositions certain. Some juvenile adjudications are marked "disposition unknown," but these had no effect on sentencing in this case. Further, Whitaker qualified as a career offender, which regardless of the total criminal history points would place him in Category VI, and he does not dispute that finding.
 
 
 16
 Whitaker was sentenced to the statutory maximum, sixty months, on Count I, and to a consecutive three-month sentence on Count 2; the total sixty-three months was at the upper boundary of the imprisonment range for Offense Level 17 and Criminal History Category VI. Pursuant to Sentencing Guideline § 5G1.3(c), the judge ordered the sentence to run consecutive to a state sentence of sixty-seven years imprisonment.
 
 
 17
 We find no error in these calculations. The base offense level was 12. U.S.S.G. § 2A6.1(a). On Count 1, no adjustments were made. On Count 2, because the victim was a government officer, 3 levels were added for a total offense level of 15. U.S.S.G. § 3A1.2(a). Pursuant to § 3D1.4, the offense levels were correctly combined to reach a total of 17. Using either his criminal history total or his career offender status, Whitaker clearly belongs in Criminal History Category VI. The district court chose a sentence within the Guideline range and correctly chose to apply § 5G1.3(c) as neither § 5G1.3(a) nor § 5G1.3(b) was applicable. Under that guideline it was within the court's discretion to choose consecutive terms of imprisonment, and its reasons for doing so indicate that it did not abuse its discretion.
 
 
 18
 Having reviewed the entire record, we determine that there are no nonfrivolous issues for appeal. Consequently, counsel's motion to withdraw is GRANTED and the appeal is DISMISSED.