UNITED STATES of America, Plaintiff,

v.

Thomas BATES, Jerome Crowder, Bernard Green, Louis Hoover, Roland Lewis, and Edward Williams, Defendants.

No. 89 CR 908.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 16, 1996.

Robert Clarke, Chicago, IL, for Thomas Bates.

Carl Clavelli, Chicago, IL, for Jerome Crowder.

Kent Carlson, Chicago, IL, for Bernard Green.

Donald Paull, Chicago, IL, for Louis Hoover.

Keith Spielfogel, Chicago, IL, for Roland Lewis.

Jerry B. Kurz, Chicago, IL, for Edward Williams.

Barry R. Elden, Assistant U.S. Attorney, Chicago, IL, for the Government.

### *OPINION*

RICHARD MILLS, District Judge:

"El Rukn III" on remand.

*Limited* remand.

On April 23, 1996, the United States Court of Appeals for the Seventh Circuit vacated Defendants' convictions and remanded this cause for a limited purpose. Contrary to Defendants' assertions in post-appeal motions, there is but one issue which this Court needs to address on remand. This Court is directed to determine "whether exclusion of the evidence about the open unit, when added to the instances of prosecutorial misconduct (including eliciting testimony as to prior bad acts by two of the defendants) constituted a prejudicial error and so entitles the defendants to a new trial." *United States v. Williams,* 81 F.3d 1434, 1444 (7th Cir.1996).[1]

Therefore, there is no need to address matters, such as the prosecutorial misconduct, which have been addressed by both this Court and the Court of Appeals. This is not to say, however, that this Court should view the "open unit" evidence in a vacuum. On the contrary, this Court must view the open unit evidence in totality with the other irregularities which occurred at trial, including the testimony concerning the prior bad acts of two of the defendants. *Id.* This Court must

---

1. A breviary of the factual backdrop of this case is set forth in both *Williams, Id.* at 1437, and this Court's opinion order in *United States v. Bates,* et al., 843 F.Supp. 437 (N.D.Ill.1994).

determine, after "throwing the open unit evidence into the pot," whether there is now a reasonable likelihood that Defendants are entitled to a new trial due to prejudicial error.

Defendants claim that when the open unit evidence is added to the other prosecutorial misconduct which occurred at trial, there is enough weight to shift the scales in favor of granting Defendants a new trial. Three arguments are made.

## I.

■ *First,* Defendants argue that the Government's opening and closing arguments establish that even the prosecution believed that the jury would not have returned a verdict of guilty had it known of the open unit evidence. Defendants assert that the constant statements by the Government that the cooperating witnesses were kept separate from one another gave credibility to the otherwise non-credible witnesses.

The reviewing court addressed this point by commenting that "[l]awyers are cautious people by and large, and even a lawyer who has a very strong case will want to make it stronger." *Id.* at 1441. It is clear that the prosecution engaged in grave misconduct in several aspects of the case. However, the Government's closing and opening arguments regarding the witnesses' lack of opportunity to collaborate do not raise a reasonable likelihood that the verdicts would have been different.

The cooperating witnesses, although housed together, were debriefed separately. In addition, the cooperating witnesses were debriefed and/or testified before the grand jury prior to being housed at the Metropolitan Correctional Center (MCC) in Chicago. Therefore, even if Defendants had introduced evidence that the cooperating witnesses had the opportunity to collaborate their testimonies before trial, the Government could have offered the witnesses' prior statements· to rebut Defendants' claim of recent fabrication. Federal Rule of Evidence 801(d)(1)(B)

> specifically permits the introduction of a witness' prior consistent statements if the declarant testified at trial subject to cross-examination and his prior consistent state-
> ments are offered to rebut an express or implied charge of recent fabrication. In addition to those requirements the witness must also have made the statements before he had a motive to fabricate.

*United States v. Patterson,* 23 F.3d 1239, 1247 (7th Cir.1994), *cert. denied* —— U.S. ——, 115 S.Ct. 527, 130 L.Ed.2d 431 (1994).

In the instant case, the cooperating witnesses testified at trial, were subject to cross-examination, and their statements could have been offered to rebut a charge of recent fabrication due to the alleged collaboration of the witnesses. Furthermore, the cooperating witnesses' statements were made prior to their opportunity or motive to collaborate since they were not housed together at the MCC until *after* they had made the statements. Accordingly, any gains which Defendants could have received as a result of the implication of the cooperating witnesses' collaboration would have been nullified by introducing into evidence the witnesses' prior statements.

The cooperating witnesses' credibility in this case was always suspect. The jury heard evidence that these witnesses were drug dealers and murderers. It is reasonable to assume that the jury took the cooperating witnesses' veracity and credibility into account when deliberating. To then say that the jury would not have convicted because these witnesses had the opportunity to collaborate their testimony is tenuous at best. There is no reasonable likelihood that the jury would convict based upon the testimony of murderers and drug dealers and would convict even though "the jury knew they [the cooperating witnesses] had, to lie to save their skins", *Williams,* 81 F.3d at 1439, but would not have convicted had they known that these witnesses had the opportunity to collaborate their stories.

Furthermore, Defendants had impeachment evidence available concerning these witnesses, and they used it. The jury heard of these witnesses' atrocities, their violent criminal acts, the falsehoods which they told to various law enforcement officials, the hundreds of dollars received by their families in exchange for their cooperation, and the significant reduction to their own sentences in

exchange for their testimony. The jury knew that these witnesses had *an* opportunity to collaborate their testimony whether it was only for one hour or for twenty-four hours. Yet in spite of all of this, the jury convicted Defendants.

This Court cannot say in light of all of the evidence which is damning to the witnesses' credibility that there is a reasonable likelihood that had the jury heard the open unit evidence that they would not have convicted Defendants. In fact, Defendant Bernard Green implied in his closing argument that the cooperating witnesses may have collaborated their stories:

> Ladies and gentlemen, I submit to you that these are not events that are so memorable that they just pop up. These people were together. They saw each other.

Trial Transcript 6007.

Furthermore, this Court admonished the jury in its instructions to weigh and consider the cooperating witnesses' testimony "with caution and great care." No evidence exists to substantiate a claim that the jury did otherwise. The law presumes that a jury will follow the court's instructions. *See Greer v. Miller,* 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987); *see also United States v. McAllister,* 29 F.3d 1180, 1187 (7th Cir.1994). Accordingly, this Court finds that there is no reasonable likelihood that the exclusion of the open unit evidence constituted prejudicial error which entitles Defendants to a new trial.

## II.

■ *Second,* Defendants argue that cooperating witness Henry Harris collaborated with Eugene Hunter when he translated the El Rukn coded conversations. Defendants argue this point as another example of the witnesses' contact with one another which constitutes prejudicial error. By this argument, Defendants imply that Harris' testimony may not have been as "expert" as claimed by the Government.

As the Court of Appeals noted, however, there is a distinction in the trial of this group

of El Rukns (III) and the El Rukn trials which occurred before the other district courts.[2] In the jury trial here, Defendant Jerome Crowder testified and corroborated cooperating witness Harris' translation of the conversations which contained the El Rukn's illegal activities. *Williams,* F.3d at 1440. The Court of Appeals even commented that "Crowder's testimony probably doomed any chance that any of the defendants would be acquitted." *Id.*

Accordingly, this Court finds that there is no reasonable likelihood that the exclusion of the alleged witnesses' collaboration on the translation of the El Rukn coded conversation constitutes prejudicial error entitling Defendants to a new trial.

## III.

■ *Third,* Defendants argue that the evidence of prior bad acts of Defendants Bernard Green and Roland Lewis constitute prejudicial error entitling Defendants to a new trial. Defendants claim that the fact that the jury was informed that Defendants Green and Lewis had been in prison, and that Defendant Bernard Green was being held in jail on a charge of murder, when coupled with the other irregularities which occurred at trial, results in prejudicial error entitling them to a new trial. This Court disagrees.

This Court gave curative instructions to the jury after the witness made reference to the Defendants' prior bad acts. Trial Transcript 1919, 2055, and 3139. For example, after witness Harry Evans referred to Lewis as being in the penitentiary, this Court instructed the jury:

> Ladies and gentlemen, I hereby instruct you to disregard the last answer that was given by this witness and give it no credence whatsoever. Strike it from your minds, if you will please.

Trial Transcript 1919. The law presumes that a jury will follow the court's instruction. *See Richardson v. Marsh,* 481 U.S. 200, 208, 107 S.Ct. 1702, 1707–08, 95 L.Ed.2d 176 (1987); *see also United States v. Henry,* 2 F.3d 792, 796 (7th Cir.1993).

---

**2.** *See United States v. Burnside,* 824 F.Supp. 1215 (N.D.Ill.1993); *United States v. Andrews,* 824 F.Supp. 1273 (N.D.Ill.1993); *United States v. Boyd,* 833 F.Supp. 1277 (N.D.Ill.1993).

Likewise, references to Defendants' prior incarceration under these circumstances does not constitute prejudicial error. *See United States v. Lomeli,* 76 F.3d 146, 149 (7th Cir. 1996); *see also United States v. Dorn,* 561 F.2d 1252, 1257 (7th Cir.1977), *rev'd on other grounds, United States v. Read,* 658 F.2d 1225 (7th Cir.1980). The evidence of Defendants' prior bad acts constituted six separate references in a trial which lasted twenty-eight days spread over a four month period. In addition, the jury had already—and subsequently—heard a vast amount of evidence regarding Defendants' other heinous crimes. These minute, individual references to Defendants' prior bad acts which occurred over an extended time frame render their prejudicial effect to be nil.

## CONCLUSION

■ Finally, the Court of Appeals remanded this case for this Court to determine "whether exclusion of the evidence about the open unit, when added to the instances of prosecutorial misconduct (including eliciting testimony as to prior bad acts by two of the defendants) constituted a prejudicial error and so entitles the defendants to a new trial." *Williams,* 81 F.3d at 1444.

This Court answers with a firm "No."

Twelve former El Rukn members testified against Defendants. No one witness' testimony determined the outcome of the case, but rather, each witness testified concerning various meetings and drug transactions in which the witness participated with Defendants. Even Defendant Jerome Crowder testified as to his drug transactions and his loyalty to the leader of the El Rukns, Jeff Fort. These twelve cooperating witnesses testified regarding trips within the Chicago and Milwaukee areas to obtain and/or deliver drugs and drug money. They also testified as to the violent and heinous nature of the criminal activities in which the El Rukns were involved. Based upon these twelve cooperating witnesses' testimony, there was sufficient evidence for the jury to find that Defendants were guilty of the racketeering crimes with which they were charged.

Furthermore, there were thirteen additional witnesses who testified against Defendants. Many of these witnesses were Chica-go police officers, Bureau of Alcohol, Tobacco and Firearms agents, and Drug Enforcement Administration agents. These witnesses testified concerning wired buys, raids, and searches of the El Rukn premises which revealed large amounts of drugs, drug paraphernalia, weapons, and documentation concerning the El Rukn gang activities. *These witnesses obviously had nothing to do with the open unit evidence.* Based upon these thirteen witnesses' testimony alone, the jury had overwhelming evidence to find Defendants guilty of the racketeering crimes with which they were charged.

Accordingly, this Court finds that the jury had abundant, independent evidence with which to find all Defendants guilty notwithstanding the exclusion of the open unit evidence. The Court of Appeals held that this Court did not abuse its discretion when it denied Defendants a new trial on each of the arguments raised by Defendants. This cause was remanded to determine a single, narrow issue. Therefore, this Court finds that the exclusion of the open unit evidence, when added to the instances of prosecutorial misconduct (including the testimony concerning two of Defendants' prior bad acts) did not constitute a prejudicial error entitling Defendants to a new trial.

*Ergo,* a New Trial based on Remanded Issues is DENIED.

